Page 23-5704 J L et al v. Williamson Co TN Board of Education Oral Argument, 15 minutes per side. Mr. Gilbert for the appellants. Good morning, your honors. I'm Justin Gilbert. I'm from Chattanooga. I'd like to reserve four minutes for rebuttal, please. Two of the court's most prominent reported decisions on the issue of placement are L.H. v. Hamilton County and then last year M.Q. v. Knox County. In L.H. v. Hamilton County, it took four years and ten months to go from due process to a Sixth Circuit decision on placement. In M.Q., it took three years and ten months to get that decision on placement. I know because I'm the lawyer in those cases. Those kids, fortunately, were able to secure a private placement. One had Down syndrome, one had autism. But that's not the case for most kids with special needs. Kids with parents from poorer families or middle class families, and particularly kids with emotional or behavioral disorders, cannot resort to private schools. And that's why this gap of how long it takes to go from due process to final decision of placement is immensely important to most special needs kids in the United States. In this case, J.L. has behavioral disorders. He initially was placed in regular education where he had behavioral and emotional supports available to him. When the district tried to move him outside of the regular education program, due process was filed by both sides, first J.L. and then by Williamson County. What the lawyers didn't understand at that time, and from what I can tell, District Judge Trauger may not have understood. We never had oral arguments. I'm sorry, they didn't understand what? What they didn't understand at that time was how the disciplinary rules in the context of statehood apply. That is, if you have a dangerous student or you have allegations of serious bodily injury under 1415K1G, then the school has a unilateral right to remove that child for a maximum of 45 days. How does the 10 versus 45 days work? Can you just explain that to me? Yes, the 10 days is to determine whether the conduct is a manifestation of a disability. If it is a manifestation of a disability, normally the child goes back to the placement. If it is not a manifestation of a disability, then the child can be disciplined just as any other non-disabled student. I'm sorry to interrupt you, but why did the district back in 2020, I think it was 2020, go to court for the 45 day? Do you remember? I do. I suspect because they thought they had to, they didn't realize they had the unilateral right, and the lawyer for my client didn't realize it either. They thought they had to competing due processes. Based on that mistake, admittedly by both parties, this Honig Settlement Agreement was entered into. Can I ask you, is he operating right now as if the Honig Settlement, in other words, he's not in a private school anymore, right? He's being homeschooled, not homebound, but homeschooled by his parent because he can't get back in public school due to the Honig Settlement Agreement being his quote unquote stay put. Can I ask you one more question? I think it's NW, but there's three ways I think we could, so there's four possible solutions in my mind. They can all be wrong or right, I don't know. One is there's no stay put. Two is the stay put's the 2019, what you're asking for. Three is the stay put's the Honig Settlement, which the motions panel found. Four is, which no one's considered, and I know your answer to this, but I'm going to throw it out, is the 2020 Robson Academy. I'm just going to call it that. Under NW, that's a then agreed upon. I recognize you all said it's not a stay put, but what NW makes us, like that's the last agreed upon placement, but if we have to honor you all saying there's no stay put, then it could be the Honig, it could be any of these. Other than the 2019, I'm just curious in your mind, what's the best for your client? Other than the 2019, what is best for my client? So if we hold that one of the others is, I'm just curious, I know this isn't the way you do law, but this is a weird area where you've got valid considerations from the school, valid considerations from you, so what do we do in that situation? I think NW tells us that there has to be an agreement on both sides, and so I think that knocks out these alternatives. Why there's agreement on both sides for each of them, isn't there, other than the 2019 arguably? There's an agreement on the Honig, but only for a temporary period. But it doesn't say anything about qualifiers, it just says, not agreed upon. It actually does have qualifiers. In NW itself? Oh, I'm sorry, I thought you meant the Honig agreement. I don't know. I know the Honig agreement, but I know the Robson Academy agreement. Yes, yes. In NW, the qualifiers are that there cannot be a unilateral placement. Both sides have to agree. You agree, both sides agree to both 2020 agreements. Yes, for a confined period, I do. I'm just curious what's best for your, is it no stay put, Honig, or Robson? I wouldn't limit myself to those, but for the purpose of your question, Robson would be better. Problem with that, of course, is Robson doesn't exist, and then you'd have to get a comparable placement to Robson. But at least that would get the child back in school. Right? Yes, Judge. It's kind of a question that's sort of related to that, but it's a practical, in the vein of a practical question rather than a legal one. Obviously, it would be in the interest of the child if the parties could agree on an appropriate placement. We have a settlement program, but I don't know that it's suited for this kind of situation because I think you would probably need, if it was to be mediated, it would probably need to be a person who had a good deal of knowledge about educational systems and who also had a good deal of knowledge about behavioral problems of children of the type we have here. Have you explored whether there's any such person who could possibly mediate this situation and get you all out of litigation? The topic of mediation has been pursued in settlement talks with my friend, Ms. Averitt, many times. There are not many people. You're quite right, Judge Gibbons, that have the expertise in this area. I mean, it would be a special person who...  It would. Okay. Yeah. I was... You have not found anybody available in the reasonable geographic area that could help you all out? There are people. There are people. It would require some education. Nobody could do it. I was hopeful, frankly, that the district court would recognize that he gets back into public school, and obviously he's going to require some updated behavioral supports. At that point, let's go to mediation. Let's get a behavioral specialist in there to help us work it out. And then he's back in school, because right now, he's got three hours of education, which our state law... And if this is... And he's how old now? He's 13 now. He's middle school. Eighth grade, right? I believe that's right. So we're to the point that he's entering the period where he's going to have... It's not just kind of the background math, English. That's going to be... He's going to be taking substantive subjects that are going to affect what he can do for the rest of his life. Yes. Indeed. And I listened to the... You weren't in the oral argument, Judge Gibbons, but Judge White was, and Judge DePauw was in the CK case where the lawyers kept going back and forth about what is a placement. A placement is not just the place. It's actually the programming. And so once we get him back in school, those programming decisions, whether they're made by the next IEP team or whether they're made by a mediator, should happen now. I was getting out of the judicial role a bit, and I think I was calling upon my former life a while back as a district judge, where sometimes you could step into the situation and say, Hey, can we do something else? And...  You know, the original due process judge did try to do that. He called or wrote me and said, in a role of a mediator, Mr. Gilbert, how about just putting him in three hours of homebound? And I said, well, that's my worst case scenario. I can't accept that. We want to get him back in school. Can I ask you, what happens if there's no stay put? Does that force you all to sit down and figure it out? I've not seen a case where there's no stay put judge, and in W, the stay put went back to the St. Rita School for the Deaf when it was very early on. Boy, I can't imagine losing stay put protection altogether, or where the parties would begin with a baseline. And then one final question, but if there is no stay put, doesn't it force you all to the table? I've never seen a situation where there is no stay put. Either party right now, in theory, could call an IEP meeting, but we have gridlocked because we can't get beyond the school's argument that there is stay put, and it's only homebound of three hours. Where does the due process proceeding stand? It is completed, we have exhausted due process, and J.L. was not successful at due process and has appealed into district court. Your time is up, but we've spent a lot of time talking to you about, we haven't given you much time to present the legal argument you wanted to make to us, and if you want to take just a couple of more minutes to sum up your legal argument, I am happy to accommodate, because I feel like we kind of took up all your time with more practical concerns. I'm delighted with the questions, and I'll just briefly close with this. Neither side intended for the Honig Settlement Agreement to become stay put beyond its limited terms, and you don't have to believe me, I'd just like to cite the court to Docket Entry 31 at page 8. This is Williamson County in the district court. Can you say that again, I'm sorry. Yes, Docket Entry 31, page 8. This is Williamson County, where they say, and I quote, Plaintiffs are correct that the Honig Settlement was for a limited purpose. That purpose was to provide JL access to an education while awaiting a decision on his litigation against WCBOE. That's the limited time that we agreed to three hours of home bound, and we've been stuck with it ever since. And so we're asking this court to get the boy back in school, recognize that the regular education placement gets him there, and then as far as the programming, the IEP team can take back over. So the stay put is in place until when? Until we get through the Sixth Circuit on the merits, which is why I began with the framework of LH and MQ lasting four years and ten months, and three years and ten months. That's why it's immensely important, judge White. And that just got to the district court, right? This case? The merits. No. This case is in the district court. What's the other case you mentioned? The other cases are finished. LH versus Hamilton County and MQ. No, no, no, not those. I'm sorry, you said you just appealed something from the ALJ. Oh, I'm sorry, yes. This case has been appealed from the ALJ to the district court. The district court ruled on our motion for preliminary injunction. But hasn't ruled on anything else?  Okay, thank you. Thank you all. Good morning, your honors. May it please the court, I'm Deanna Averitt, and I've got Angel McLeod, co-counsel, here with me on behalf of Williamson County, Tennessee Board of Education. And as my opposing counsel has stated, this really is an issue about what is state put. As it relates to going back to what happened back in 2019 and 2020 regarding the Honig injunction, we would disagree that we had any unilateral authority to remove the child. I believe... You're saying you don't have unilateral authority under 1415K to remove the child? That is correct, your honors. So there are two different provisions of the statute that plaintiffs have cited, and they have confused the two provisions. So it is at 20 U.S.C. 1415K, and under 1415K1G, it allows unilateral authority for the school district to remove a child for up to 45 days under three exceptions if it is a manifestation of the child's disability. In this case, we never got to that point of determining a manifestation, but it likely would have been based on the child's disabilities. So under those three provisions, it is if we have drugs, if we have weapons, and the third, which is what is being referenced by plaintiffs here, if the child has inflicted serious bodily injury upon another person while at school, on the school premises, or at a school function under the jurisdiction of the state or local education agency. So it's not if we anticipate or because the child's behavior is such that we think there's going to be a danger. He has to have already inflicted serious bodily injury. And there is actually a definition of serious bodily injury. I thought his brief is consistent with that. At least I read his brief to be consistent with that. But what's wrong with that? I mean, you have the 10-day provision.  That doesn't have the same restrictions as I understand it. Correct. We can remove up to 10 days without fake. That is correct, Your Honor. And then you can go to a hearing officer, correct? Correct. So what the argument was, though, was that we had unilateral authority. But you do have unilateral authority to remove him for 10 days. Correct. And then you have unilateral authority to remove him for 45 days if he's dangerous. If he has already inflicted serious bodily injury. And that definition means that there is a substantial risk of death that has occurred, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. So it is not just the child has injured someone, bruised someone, broken a nose. There are cases that say that's bodily injury, not serious bodily injury. So we are looking at a really high standard there. There is another provision that is also referenced but kind of confused where we do not have unilateral authority and it has to be brought before a hearing officer. That is 20 U.S.C. 1415 K3A. And that is if a local education agency believes that maintaining the current placement of the child is substantially likely to result in injury to the child or others, they may request a hearing and in which case the hearing officer may remove. So go back to my question. So you could remove him for 10 days and request a hearing? Correct, Your Honor. And that is what we did back in 2020. And so why couldn't you do that again if this placement posed a problem? We could. The hearing officer can only remove up to 45 school days. And that's correct. And, Your Honor, we would get there if the child's placement were such that we were required to maintain him in a school setting and we felt like he was a danger to others, which is what happened back in 2019. We don't get there now. We feel like that is not even an issue that we could bring up because his placement. Because he's been homeschooled. Correct, Your Honor. Because his placement, we don't believe his placement is in the regular education setting. And, therefore, we don't ever get to that argument. But if it were, if the court were to rule that way, then yes. Don't you agree three hours of education a week is absurd? I'm sorry, Your Honor, what? Don't you agree three hours of education a week is absurd? I mean, we're setting this kid up for failure. So, Your Honor, that is not the only thing that has been offered here. When we talk about settlement and trying to resolve this, Your Honor, there have been a lot of things offered. There have been two IEPs offered since that point in time. One, there have been two IEPs offered since the 2020 Robson placement, the 2020 Honig settlement. One of those was in what we would consider a comparable placement to Robson, but it was a state-approved therapeutic school. The parent rejected that, filed due process in 2021. Then, the last IEP that was offered in, I believe it was 2022, placed the child at the child's homeschool in a special education setting. Again, the parent rejected that, and that is what is on appeal to the district court. I also disagree that while this is absolutely a long process going through all the litigation, in the CK case, as this court held, if a due process hearing officer finds in favor of the parent's private placement that they are seeking, then it changes stay put because it's an agreement then between the state and the parents. While it's a lengthy process, if the parents are right and they win at due process, stay put changes. Here in this case, they did not win on the merits of the case. The ALJ did find that the school district's IEPs were appropriate, both at therapeutic placement with homebound services. We tried to go forward with therapeutic, and the parent refused to cooperate in that process. The second one was in the school setting, in a special education setting. Both of those, at this point in time, are on appeal to the district court, but if the ALJ would have found in their favor, that's where we would be for stay put. Can I ask you the question, why isn't the Robson the stay put? Your Honor, I think when we're looking at settlement agreements, and there are many cases cited in the record, as you're well aware, the big thing we're looking at, did the parties intend it to be an educational placement under the IDEA, or was it just funding for a private unilateral school to resolve a settlement agreement? Districts have the option of using IDEA money to place a child in a private school, and provide an education pursuant to an IEP, or we can use non-IDEA money just to resolve a case, and say, parents, we're going to pay you for a part of that, even though we don't agree it's appropriate, just to settle this case and not go through the expensive litigation. In that Robson case, our settlement agreement, that was absolutely a payment for a private placement that was unilateral that the parents chose, and I think the language of that settlement agreement that we briefed states, this is not an educational placement, the parties agree to that. There's actually a case out of the Ninth Circuit, KD, that the plaintiff cited in their reply brief, and it goes through a really good analysis discussing a Second Circuit case from 1982 that talks about the difference between payment and placement, and that those are two different matters. So I think that's where we get into, when we're looking at what can become a state placement, I don't think it matters whether it's temporary or not. I think it depends on whether it was a placement at the time or not. So if we were to say that the Hornig agreement was a temporary agreement that was part of the settlement and wasn't intended to create a placement, does that then mean that it's the 2019? Well, Your Honor, first we would argue that state placement doesn't apply in this situation because of all the intervening unilateral placements that the parent has since placed the child in. That goes back to when we talk about what does the IDEA statutory language say? It very clearly says, remain in the current educational placement. So there is no place for him to remain. When you even look at cases like the U.S. Supreme Court Horning, some Sixth Circuit cases from here, like Paul B., we talk about consistency. We talk about status quo. I mean, the whole point in statehood is not whether it's appropriate or not. It's not moving the kid around while we're fighting over these issues. So what are the cases where there has been no statehood? So I will tell you, Your Honor, that's very lacking in those case law. There is the Michael C. v. Radner, which is Third Circuit, 2000 case. Now that case does have a little bit different facts. In that situation, the parent moved the child from one state to the other. And so they were saying essentially that new state had not approved that state placement. It was based on a previous state. NW, while there are some variations in what NW says, and I do think that case is a little bit confusing on that situation, it does specifically say under the statehood section in that court, the IDEA statehood provision does not apply to NW. And I think one of the important things here is clearly we've had four years of arguing what is statehood, right? The parties have disagreed. And at one point in time, when we had the 2021 case that was pending, the plaintiffs later withdrew their due process case. We actually, the school district, went before the administrative law judge and asked the administrative law judge, okay, we can't agree on this, right? We think it's homebound. They think it's based on a 2019 IEP. Administrative law judge, you tell us what it is and we'll do it. That was not a mediation discussion, as opposing counsel said. That was a motion filed by the school district. We had a conference call on that with the judge, and in that discussion, the judge said, first let me know whether, parent, you're willing to do homebound. And then they came back with a letter that's in the record that says, we're not willing to do homebound and we're just going to withdraw him to a unilateral placement. So that ended up being moot and there was no decision by the administrative law judge. But, okay, NW, didn't the court ultimately say that that old placement was the state put? So the court did, but that was not the holding of the court because that was not what the parties were asking for, and it does not appear to be what the parties briefed. The school district was actually briefing and arguing that it was the proposed placement, which clearly we all know under case law that's not correct. The parents were arguing that it was their unilateral private placement. So I would just say that that's not essential to the holding. What cases say that there's no state put? So I don't think there's a case that specifically says that. I think what it is is it goes back to that plain language of the statute that says, remain in current placement. And then you have, like I said, the Sixth Circuit cases, Thomas and Paul B, that say we're guaranteeing consistency in learning. Remain in the then current placement, but then NW, I know we're not supposed to do this, but it kind of modified the law and said it's the last agreed upon placement, which I come back to Robson being the last agreed upon. I get that it's outside of idea, but why isn't that under the language of this? I mean, it was St. Rita's in NW, so why isn't that it? So, Your Honor, I think it's because it wasn't a placement. And it has to be an educational placement under the IDEA. I think it was very clearly a funding the school district paid for funding for Robson Academy. The parent withdrew the child from school. There was no IEP in place. I'm sorry to interrupt you, but was St. Rita's in NW? It was a placement, Your Honor. It was actually a placement by the school district. There was an IEP in place at St. Rita's. In this particular case, if I understand the facts, there was in 2019, or I guess it was the beginning of 2020, you couldn't reach an agreement. Correct. Okay. And then everything that has happened since is the result of the fact that you can't reach an agreement. And you basically get these sort of stopgap situational placements. Doesn't that kind of tell you that the last placement was before this disagreement started? So, again, if we're looking at educational placement, that 2020 Honig Settlement Agreement placed the child. The child was being provided homebound services by the school district. It was an educational placement. It was pursuant to using that 2019 IEP but changing the placement. So they were working on behaviors, goals consistent with that IEP. But it was a temporary resolution of the stay put issue. I mean, of the interim issue. And it was just, that was supposed to expire when the case was resolved. Yes, Your Honor. And I would say, as the district court judge has said, every settlement agreement pretty much you look at and every IEP has an end date. Has what? An end date, a time period in which it's supposed to expire. What the law in stay put does is allow you to extend that beyond that end date. Would you respond to what Mr. Gilbert said about my question about, you know, efforts to resolve the case and what kind of person could reasonably be expected to resolve this sort of case? Would you agree with what he said to me in his characterization of that situation? Yes, Your Honor. I believe I would. And I think the very challenging thing in this case, and, you know, we work in a lot of these cases and we from a school district standpoint know it is always better to resolve, right? For the family, for the child. The problem in this case is every time we've had an IEP meeting, the parent is adamant that the child be in the general education setting. She doesn't even want the child to have the option of going to a special education setting during the school day for behavior supports. She thinks him being pulled out, and I cited that in our brief, is a trigger for him. And so every time the district has proposed an IEP, we have agreed that it's a trigger and we believe that he needs more support. So when we're looking at this, really the only resolution that I think the parents would agree to would be to put him in a general education setting, which the district has repeatedly said they don't believe is appropriate to meet his needs and keep him safe. And I believe we're out of time, Your Honor. Unless we have any other questions, we would just ask that this honorable court affirm the district's decision that J.L.'s stay-put placement is not his 2019 IEP. Thank you. Stay-put is one of the most important protections for children. And I want to go to your question, Judge White, about NW. If the court finds that this Hanig settlement agreement is temporary, just as paragraph 1 and paragraph 4 says, does it not revert to the 2019 IEP? The answer is yes under NW. Under NW, the parent actually tried to hold over at this private school, but that private school was limited. The agreement to pay for that was limited by the school district. And so the parent actually lost that case. That was not the stay-put. It reverted all the way to St. Rita's School for the Deaf. And so our argument is the same should be true here. I respectfully disagree with my colleague that the parents are demanding only regular education without special education supports. If you look at the 2019 IEP, there's already some pullout with emotional and behavioral supports. It seems like they've offered you a couple things you could have taken versus three hours of homebound school. Why not? Because it's a trick bag, Judge. I'm wary of these temporary agreements. We've been burned twice. I get it, but the kid's suffering in the meantime and you've got, I mean, as you yourself said, if we say there's no stay-put or we say it's the Honig, I mean, that's worse for you than taking one of these. I feel like we're right on the law. And the law says the parent gets to choose between the correct stay-put and the alternatives the school district is proposing. And those alternatives are, so far, a therapeutic day school, an alternative school. The flip side is there's no cases out there where you have a Honig settlement, at least that I've found, maybe you've got one, after an agreed-upon stay-put and a court went back past the Honig settlement. I'm not sure I followed. There's a lot of cases where the parties agree for a temporary placement and it is enforced just as temporary. That happens all the time. And they skip it and go back to say the then stay-put is something four years back? The closest case I can find to that is in W. But in practice, school districts and parents make temporary agreements all the time because you're not sure about placement. You may say, hey, let's do a three-month trial placement in this classroom. Well, then why not make a temporary agreement now, similar to what they offered, and then figure it out? Because I have a school district that insists that temporary agreements aren't temporary. They become stay-put. And so if I agree to put him in this alternative school, I'll have a school system that says that's now his stay-put. If I agree to a half-day with- Why don't you spell out in the settlement agreement something else? I mean, some sort of a temporary placement. I think the point Judge Tapari is making is let's stop putting you at the mercy of judicial officers who are not- We've got to try to do what the parameters of the law direct us to do. We are not in any position to figure out what's best for this child. The parents are in the position, working with the school district, to figure out what's best for this child. I'm sure that all three of us care just as much about children as any other human being with reasonable feelings. I mean, we all have children of our own. But any solution you come to has got to be better than what we could order, which doesn't solve- We can't get beyond certain parameters that I don't know that- And you all can use all the imagination and all the creativity and all the variations to try to come up with something that works for everybody. There's got to be something out there. I don't know that I can negotiate any harder or any more frequently. I've done it at every stage I can. Well, why not agree to one of these schools like you did with the Robson Academy and say it's not a stay put? One of these schools? One of what they proposed. Because it's like the Honig decision says, stay put in regular ed is particularly important for emotionally disturbed kids because we don't have those schools in Tennessee. It didn't work at Robson. It didn't work at the previous one. We need the federal funding and the supports. Right, but they're offering one of their schools, right? And they're also offering significantly better education than he's getting now. I mean, that seems pretty undebatable. And my point is, if everyone truly cares about the kid, why not take one of those and continue to negotiate so you get him out of the problematic place where he is now? Where he is now is a full day of home school as opposed to home bound. The parents are using a private home schooling program where he can get eight hours a day. That's better than what the school is offering. It still doesn't give him the peers of regular education, behavior certified analyst, and those things. And so that's what we're trying to get him back into, to have some friends back in public school. But we're not sitting on our thumbs taking three hours of home bound. You've got to understand, if he didn't work in the public school, he didn't work at Robson, he didn't work at the next place, the school has legitimate concerns too. They can't just look at one child. They have to look at the collective body. You and I agree on that. That's what the 14, 15K provisions that are an exception to stay put mean. Congress has resolved this. The court shouldn't be involved in this. Stay put should be general ed. And if they have those concerns, the 10 day and the 45 day apply. That's the system Congress created. But we've got to get this kid back in school. And if I could negotiate any harder to get him in there, I promise you, Judge Gibbons, I would. It takes two to tango. Once they invoke the 45 days, which needs to, in this case, depend upon there having been some infliction of serious injury, right? Right. So the 45 days passes, he comes back, and then it starts all over again? I believe there's a provision that says once he comes back, the IEP must be looked at. There must be additional behavioral supports put in place. The behavior intervention plan must be revised to look at what was the antecedent behavior that caused that problem in the first place. And, again, that's not a court issue or a Justin Gilbert lawyer issue. That's an IEP team issue that takes care of itself. I see I'm out of time. We thank you very much. Thank you, Judge Gibbons. We'll, of course, consider the case carefully.